UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BONNIE WHITLATCH, ) | CASE NO.:   1:10CV505 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Bonnie Whitlach supplemental security income (SSI.) The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his June 29, 2009 decision denying Plaintiff's disability claim. (Tr. 7-18). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.   PROCEDURAL HISTORY

Plaintiff, Bonnie Whitlach, filed her application for SSI on December 22, 2006, alleging she became disabled on September 30, 2006. (Tr. 130). Plaintiff's application was denied initially and on reconsideration (Tr. 69-71, 73-75). Plaintiff requested a hearing before an ALJ, and on June 1, 2009, a hearing was held where Plaintiff appeared and testified before an ALJ along with Michael Dorval, a vocational expert (Tr. 19-66).

On June 29, 2009, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 7-18). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr.1-3). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

**II**.	**STATEMENTS OF FACTS**

Plaintiff was born on September 8, 1956, which made her fifty-two years old at the time of the hearing (Tr. 22, 130, 170). Plaintiff has a GED with no post relevant work experience (Tr. 22, 57, 144).

**III**.	**SUMMARY OF MEDICAL EVIDENCE**

Plaintiff suffers from fibromyalgia, morbid obesity, personality disorder with depressive and anxiety-related features (Tr.12).

In April 2007, Plaintiff underwent a physical consultative examination evaluation with Dr. Donald Beddard. Plaintiff reported feeling tired and exhausted, laying down approximately thirty minutes per day. The examination revealed decreased range of motion in her neck and shoulders, with some point tenderness in her back. Dr. Beddard's impression was a history of fibromyalgia, overweight, fatigue and depression. He opined that Plaintiff would have difficulty lifting and carrying (Tr. 273).

In March 2008, Third Street Clinic records reveal she underwent physical therapy for pain and was performing home exercises (Tr. 345). In June 2008, she returned complaining of continued fatigue from her fibromyalgia. She was prescribed citalopram and elavil (Tr. 343).

Psychologically, Plaintiff suffers from a history of depression and anxiety. In February 2007, Richland County Jobs and Family Services performed a psychological evaluation to determine Plaintiff's employability. She reported feeling hopeless and extremely socially withdrawn. She appeared tearful during the interview and was unable to maintain concentration and attention. She stated that recently she has "gone weeks without bathing or basic hygiene." Plaintiff was diagnosed with Major Depressive Disorder (Tr. 223-225).

Disability Determination Services completed a Mental Residual Capacity Evaluation in April 2007, indicating Plaintiff could perform simple, routine, predictable tasks, without strict production or time pressures, in an environment with limited and brief public interaction. She would require increased supervisory support for any changes in job duties (Tr. 292-294).

In March 2007, Plaintiff began treatment with The Center for Individual and Family Services.

Her mood was consistently noted as flat and constricted. She reported difficulty sleeping, anhedonia and sadness. Her diagnosis continued as Major Depressive disorder (Tr. 311-324).

In October 2008, she reported continued depression, anhedonia, decreased concentration, fatigue and decreased motivation. She stated she was fearful going to places alone and had difficulty in crowds. Treatment notes reflect that vocationally, Plaintiff reported being terminated from several jobs for being "too slow" and having difficulty catching on or keeping up (Tr. 355-369).

In December 2008, she presented with complaints of feeling stressed and overwhelmed. She was involved in a BVR training class of computers and was having difficulty with the increased activity (Tr. 337).

In April 2009, treating Nurse Practitioner C. Smith from The Center for Individual and Family Services provided an assessment of Plaintiff's work related abilities. In this assessment, she opined that Plaintiff "could likely function in a repetitive, uncomplicated, protected work environment." This opinion was based on her struggle with depression, anxiety and "easy distract-ability" (Tr. 353). The Nurse Practitioner went on to state that she would need a lot of "consistency, security and kindness to function effectively in a work environment" (Tr. 354).

### IV.    SUMMARY OF TESTIMONY

On June 1, 2009, Plaintiff appeared with counsel before the ALJ (Tr. 19). Plaintiff described her short term tenure at a number of jobs, but reported being considered too slow (Tr. 23, 30-31). Plaintiff said she earned her GED after dropping out of high school (Tr. 28). Plaintiff reported living alone, and said her case manager helped with her shopping, although she cared for herself and did her own cooking and cleaning (Tr. 33, 49-50). Plaintiff reported completing a computer training class, but said her instructors were unhappy with her typing speed (Tr. 40). Plaintiff said she applied to about 3 or 4 jobs within the past six months, but could not remember where (Tr. 41). Plaintiff said her family practitioner told her in 1988 that she had fibromyalgia, but she had not seen a rheumatologist in 10 years (Tr. 37-38). Plaintiff said she could not stand for more than an hour, sit for long periods of time, or be around people (Tr. 34, 45-46).

Vocational expert Michael Dorval also testified (tr. 56). The ALJ asked a hypothetical

-3-

question about an individual with Plaintiff's age, education and background, who could do light, unskilled work with a sit/stand option, but required only occasional exposure to the public (Tr. 57). The vocational expert indicated there were many such jobs in an industrial/factory type setting (Tr. 57). Specifically, the vocational expert identified assembler, inspector and laundry worker jobs (Tr. 58). Plaintiff's counsel asked the vocational expert about Nurse Smith's opinions, and the vocational expert indicated that all of the jobs identified could "absolutely" be performed by an individual whose limitations were consistent with the boxes Nurse Smith checked (Tr. 60-63). The vocational expert then said he did not know what the term "protected work environment," as used by Nurse Smith, meant (Tr. 63-64).

### V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

Hogg v. Sullivan, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step to show that

alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. See, Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. See, Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. See, Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. See, Richardson v. Perales, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. See, Id.; Walters, 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. See, Houston v. Sec'y of Health & Human Servs., 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts two assignments of error:

I. The ALJ erred at Step 5 of the sequential process by failing to pose a proper hypothetical question to the vocational expert.

II. Substantial evidence proves that Plaintiff is disabled by fibromyalgia and pain.

Under the Act, the Commissioner uses a five-step analysis in evaluating disability claims. 20 C.F.R. §§ 404.1520. Under this analysis, the ALJ found Plaintiff had not engaged in substantial

gainful activity since her application date in accordance with step one, and had severe impairments in accordance with step two, but no listing level impairments in accordance with step three (Tr. 12, 15). The ALJ determined Plaintiff had residual functional capacity (RFC) to perform unskilled light work with an at-will sit/stand option and only occasional exposure to the public (Tr. 16). The ALJ also found Plaintiff had no past relevant work, but could perform other jobs, including assembler, inspector and laundry worker jobs (Tr. 17-18).

The ALJ recognized that Plaintiff's fibromyalgia was a severe impairment, but did not find it to be disabling (Tr. 12, 17). The Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's level of functioning.

The law and facts do not support Plaintiff's argument that the fact of her fibromyalgia alone renders her disabled. See, Vance v. Comm'r of Soc. Sec., No. 07-5793, 260 Fed. Appx. 801, 806 (6th Cir. Jan. 15, 2008) ("A diagnosis of fibromyalgia does not automatically entitle Vance to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving or, at worst, stable"); cf. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [claimant] is one of the minority.")

In this case, the ALJ found that there was lack of evidence to support Plaintiff's fibromyalgia caused significant functional limitations. As the ALJ indicated, her doctors noted her history of fibromyalgia (Tr. 13, 273), but she was not being actively treated for it, and moved around quite well (Tr. 273). Her fibromyalgia was described in 2008 as "stable," (Tr. 14, 344), and Plaintiff admitted she had not seen a rheumatologist in 10 years (Tr. 38).

Since the Plaintiff doesn't have medical documentation concerning recent problems attributable to her fibromyalgia, Plaintiff argues that her pain was, by itself, completely disabling (Plaintiff's Br. At 12). Nevertheless, substantial evidence supports the ALJ's assessment of her pain. Plaintiff argues that under the ruling in Duncan v. Sec'y of Health and Human Servs., 801 F.3d 847, 855 (6th Cir. 1986), Plaintiff need not prove objective evidence of pain (Plaintiff's Br. at 10). However, the record shows that the ALJ expressly evaluated Plaintiff's complaints of pain and her

treatment under the requirements set forth in 20 C.F.R. § 416.929 and SSR 96-7p (Tr. 13-14, 16-17). Evaluation under these provisions is supported by the ruling in Duncan, and an ALJ who follows Duncan does not commit error. See, e.g., Felisky v. Bowen, 35 F.3d 1027, 1038 (6th Cir. 1994) (stating that Duncan enunciates 20 C.F.R. § 404.1529).

In evaluating Plaintiff's allegations of pain, the ALJ noted that Plaintiff was prescribed Motrin and Tylenol for her pain (Tr. 13, 206). In addition, Plaintiff rated her pain in March 2008 as "5/10." and was prescribed home physical therapy exercises (Tr. 345). In 2008, many of the medical notes did not even reference her fibromyalgia, and the one that did described it as stable (Tr. 344).

The entire record supports the ALJ's determination that Plaintiff had fibromyalgia, which was a severe impairment, but did not cause sufficient functional restrictions to render her disabled.

Substantial evidence supports ALJ's findings under step five. The ALJ posed a hypothetical to the vocational expert, under the RFC he determined, and the vocational expert identified a significant number of jobs such an individual could perform (Tr. 57-58).

Although Plaintiff asserts a step 5 error, she really challenges the RFC the ALJ used in the hypothetical question (Plaintiff's Br. At 7-9). Specifically, Plaintiff argues that the ALJ inappropriately interpreted the phrase "protected work environment," which Nurse Smith used in her opinion form (Plaintiff's Br. At 7; Tr. 353). As the ALJ recognized, Nurse Smith believed Plaintiff could work, and "likely function in a repetitive, uncomplicated, protected work environment," but would need "A lot of consistency, security and kindness" (Tr. 14, 353-54). The ALJ "gave considerable weight" to Nurse Smith's opinion (Tr. 15), which he incorporated into his RFC finding, which restricted Plaintiff to unskilled light work with an at-will sit/stand option and only occasional interaction with the public (Tr. 16).

The ALJ interpreted "protected work environment" to mean one where Plaintiff was not exposed to the public more than occasionally (Tr.16, 64-65). Substantial evidence supports this conclusion, as Nurse Smith identified Plaintiff's restrictions in interacting with others (Tr. 354), and Plaintiff testified that she was bothered by being around people (Tr.34).

At the hearing, Plaintiff's counsel argued that this phrase meant "non-competitive

environment," but the ALJ did not agree with that interpretation. (Tr. 64-65). Once the ALJ determined that the medical evidence supported his conclusion that "protected work environment" meant limited exposure to the public, and incorporated that restriction into his RFC, he was not required to incorporate any additional restrictions in the hypothetical question he posed to the vocational expert.

The role of the vocational expert is to determine whether there are jobs that can be performed by a person with the age, education, work experience and RFC of a claimant. 20 C.F.R. §§ 416.912(g); 416.960(c). The vocational expert's admission that he did not know what a "protected work environment" was did not undermine his opinions, because the ALJ did not present him with an RFC incorporating such a restriction. The vocational expert correctly identified jobs that could be performed by the individual in responses to the ALJ's hypothetical question. In conclusion the ALJ did not commit any error under step five.

Substantial evidence supports both the ALJ's RFC finding and his step five finding. Hence the ALJ's decision is hereby affirmed.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff has the residual functional capacity (RFC) to perform light work and therefore is not disabled. Hence, she is not entitled to SSI.

DATE: May 10, 2011         */s/George J. Limbert*
                           GEORGE J. LIMBERT
                           UNITED STATES MAGISTRATE JUDGE